UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

EDWIN EUGENE MOORE,

Plaintiff,

v.

JOSEPH BENSON, et al.,

Defendants.

Case No. 3:24-cv-207-ART-CLB

ORDER ADOPTING R&R AND GRANTING MOTION FOR SUMMARY JUDGMENT
(ECF Nos. 27, 37)

Plaintiff Edwin Moore is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). He sues Doctor Joseph Benson, APRN Lorenzo Villegas, and RN Megan Sullivan for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Defendants moved for summary judgment, arguing that they had not violated the Eighth Amendment and that they were entitled to qualified immunity. (ECF No. 27.) Judge Baldwin issued a Report and Recommendation ("R&R") recommending that the motion be granted as to Ms. Sullivan, and denied as to Dr. Benson and Mr. Villegas. (ECF No. 37.) The Court adopts the R&R over objections from Mr. Moore and the defendants.

## I. Undisputed Facts

In the afternoon or evening of August 23, 2022, another inmate attacked Mr. Moore and kicked him in the left leg. (ECF No. 29-1.) Mr. Moore was diagnosed with a left tibial plateau fracture. (ECF No. 29-2.) To treat his injury, he had surgery and had hardware installed in his knee. (*See* ECF No. 29-4.)

About thirteen months after the injury, on September 27, 2023, Mr. Moore saw Doctor Nicholas Dirig, an outside provider. Dr. Dirig observed that Mr. Moore had "obvious atrophy" in his left leg, was "unable to bear weight," and "present[ed] in a wheelchair." Dr. Dirig attributed Mr. Moore's inability to walk to "flexion

contracture of a good 20 [degrees] or so." Dr. Dirig prescribed physical therapy and occupational therapy, writing that Mr. Moore "has no weight-bearing or range of motion restrictions" and "[h]opefully, if we can work on his flexion contracture and we can get him a leg that is straighter, he will be able to be more ambulatory with a cane or walker as needed." Dr. Dirig also prescribed oral meloxicam, ice two to three times a day as needed, blood work to rule out infection, a CT scan, and an MRI. (ECF No. 29-4.)

On March 26, 2024, Mr. Moore had a follow-up appointment. (ECF No. 29-12.) During the six months between his two appointments with Dr. Dirig, he had received none of the treatment prescribed, except that he got ice and 800mg doses of ibuprofen a few times a day but irregularly. Dr. Dirig wrote: "unfortunately, nothing has changed/improved. He [has] only gotten worse," observing that Mr. Moore's left leg had gone from about 70 degrees of extension to 55 or 60. Dr. Dirig repeated that if Mr. Moore worked on his flexion contracture in physical or occupational therapy and straightened his leg, he could begin walking with a cane or walker. Dr. Dirig recommended continuing 800mg doses of ibuprofen up to three times a day to be supplemented with Tylenol as needed, access to ice 2 or 3 times a day, peripheral blood work, a CT scan, and an MRI.

The following facts go to what each defendant did and did not to do help Mr. Moore obtain care after he had his first appointment with Dr. Dirig and received his recommendations.

**A. Megan Sullivan**

On January 16, 2024; February 16, 2024; and April 24, 2024, Mr. Moore submitted kites and request forms to Ms. Sullivan requesting physical therapy and ice, and noting pain. (ECF No. 33 at 38, 40.) There is response from Ms. Sullivan or notation that the kites were forwarded to Ms. Sullivan. Ms. Sullivan

said in her declaration, "I do not see the kites in my position as Director of Nursing." (ECF No. 27-3 ¶ 14.)

**B. Joseph Benson**

On October 3, 2023, about a week after Mr. Moore's first appointment with Dr. Dirig, Mr. Moore submitted a kite. Directing his request to Dr. Benson, Mr. Moore asked "when will i start physical therapy treatment. I am still experiencing excruciating pain and swelling from knee surgery." (ECF No. 33 at 8.) On November 4, 2023; December 11, 2023; February 12, 2024; March 1, 2024; and April 9, 2024, Mr. Moore submitted two more kites, a letter, and two request forms addressed to Dr. Benson, reiterating the same request and asking for ice. (*Id.* at 10, 12, 14, 16, 20.)

Dr. Benson said that he only saw Mr. Moore one time, on December 11, 2023. (ECF No. 27-2.) Medical notes indicate that on December 11, 2023, Dr. Benson ordered "follow up with any provider to discuss better pain control of knee/leg while waiting for PT/OT to be scheduled." (ECF No. 33 at 24.) He also says that he "agreed to call the culinary to inquire about how to facilitate ice being given up to 3 times a day. However, that would be up to culinary to facilitate." (27-2 ¶ 9.)

While Mr. Moore eventually was scheduled for a physical therapy appointment and received ice, it does not appear that these events happened because of Dr. Benson. On the record before the Court, Mr. Villegas was the first to request physical therapy for Mr. Moore on December 28, 2023. Subsequently, Mr. Moore's first physical therapy appointment was scheduled for July 2, 2024, but it is unclear if it ever occurred. Mr. Villegas was also the first to prescribe ice on March 12, 2024, and Mr. Moore was receiving at least some ice by the time he saw Dr. Dirig for his follow-up appointment on March 26.

**C. Lorenzo Villegas**

On October 11, 2023, about two weeks after Mr. Moore's first appointment with Dr. Dirig, Mr. Villegas ordered labs, a CT scan, an MRI, and meloxicam. On November 30, 2023, Mr. Villegas submitted additional requests for a follow up appointment with Dr. Dirig, a CT scan, and an MRI. (ECF No. 29-8 at 2-4.)

The first time that any provider requested physical therapy for Mr. Moore was on December 28, 2023, when Mr. Villegas submitted a request for URP review. (ECF Nos. 29-9, 33 at 32.) The URP approved the request for a single session with a follow-up in thirty days. (ECF No. 29-9.) Mr. Moore was not scheduled for physical or occupational therapy until July 2, 2024. (*Id.*) No evidence showing that the July 2, 2024 appointment took place appear in the record.

While Mr. Moore was waiting for physical therapy, the back and forth about physical therapy and ice continued. (*Id.*, ECF No. 33 at 26.) On March 12, 2024, Mr. Villegas prescribed Mr. Moore one ice pack per day. (ECF No. 29-10.) Mr. Villegas wrote in his declaration that he ordered medication and ice up to three times a day on March 26, 2024. (ECF No. 27-4.) On the same day, Mr. Moore had a follow-up appointment with Dr. Dirig, at which Dr. Dirig noted that he was getting ice although irregularly, and he had not gotten physical therapy. Dr. Dirig prescribed ice up to 3 times a day and physical or occupational therapy, among other forms of care. In April, Mr. Moore continued kiting Mr. Villegas about his request for physical therapy and ice, among other treatment. (ECF No. 33 at 28, 30, 32.)

## II. Legal Standard

**A. Review of Reports and Recommendations**

This Court now reviews Judge Baldwin's R&R under the Federal Magistrates Act, which provides that a court "may accept, reject, or modify, in whole or in

part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Under this binding authority, only the objected-to portions of the R&R must be reviewed. *See, e.g.*, *Fuller v. Lopez*, No. CV1905818PHXDWLCDB, 2021 WL 321234, at *3 (D. Ariz. Feb. 1, 2021) (citing S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018)). The district court may still review the portions of the R&R not subject to an objection if it chooses, as nothing "preclude[s] further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." *Id.* at 154.

**B. Summary Judgment**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *Id.*

Courts apply a burden-shifting analysis on summary judgment. A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, as is the case here, the movant can meet its burden by either (1) presenting evidence to negate an essential element of the nonparty's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the non-movant will bear the burden of proof at trial. *See id.* at 323-24. After the movant has met its burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although "[o]n summary judgment the inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion," *id.*, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)). Instead, to survive summary judgment, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing admissible evidence that shows a genuine issue for trial. *See Celotex,* 477 U.S. at 324.

## III. Eighth Amendment Violation

Mr. Moore's only claim against the Defendants is one count of deliberate indifference in violation of the Eighth Amendment.

A claim for deliberate indifference to a prisoner's serious medical needs under the Eighth Amendment involves the examination of two elements: [1] "the seriousness of the prisoner's medical need and [2] the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds*, *WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). A plaintiff must show that the defendant's response to that need was deliberately indifferent, which is a "high standard" that entails something more than medical malpractice or even gross negligence. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Under the Eighth Amendment, deliberate indifference depends on an official's subjective state of mind. It is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Either action or inaction may lead to constitutional liability if an official is aware that a prisoner faces a substantial risk of serious harm, and nevertheless neglects that person's serious medical needs. *See id.* at 842.

Whether or not a delay in care amounts to deliberate indifference depends on the circumstances. It is clearly established law that detainees have a right against official acts and failures to act that "delay or intentionally interfere with medical treatment." *Hutchinson*, 838 F.2d at 394. A "wait and see" treatment plan

may amount to a violation of the clearly established right against denial or delay of care when it is medically unacceptable under the circumstances. *Stewart v. Aranas*, 32 F.4th 1192 (9th Cir. 2022). The Ninth Circuit has held that where prison officials persist in a "wait and see" treatment plan that they know to be ineffective, and the delay of action results in injury, officials' failure to act can violate the Eighth Amendment. *Stewart*, 32 F.4th at 1195–96; *see Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989). Nevertheless, a delay does not automatically violate the Eighth Amendment, and "[w]atchful waiting" may be a medically appropriate course of treatment under some circumstances. *Hamby v. Hammon*d, 821 F.3d 1085, 1093 (9th Cir. 2016); *see Hunt*, 865 F.2d at 200 (citing *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985)).

**A. Megan Sullivan**

Judge Baldwin recommended that Director of Nursing Megan Sullivan be granted summary judgment. A "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). There is no vicarious liability for supervisors under Section 1983. *Id.* (citations omitted). Judge Baldwin concluded that the evidence did not show that Ms. Sullivan personally participated in, directed, or knew of Mr. Moore's medical needs. As she stated in her declaration, she was not "part of the team [that] provided direct patient care to Mr. Moore" and "do[es] not see the kites in [her] position as Director of Nursing." (ECF No. 27-3.)

Mr. Moore objected, arguing that Ms. Sullivan's statements are self-serving, that letters and communications sent to supervisory medical staff are sufficient to establish their personal involvement, and that if she did not see the kites it was because she ignored them.

Mr. Moore's objections are insufficient to create a genuine issue for trial. Mr. Moore would bear the burden at trial to establish that Ms. Sullivan violated his Eighth Amendment rights. Under *Celotex* burden-shifting framework, Ms. Sullivan may present evidence to negate an essential element of his case. 477 U.S. at 323-24. With her sworn declaration that clearly and unequivocally states that she does not receive kites that are directed to her, Ms. Sullivan has negated Mr. Moore's evidence of her personal involvement. Where Mr. Moore argues that communications sent to supervisory officers create an issue of fact as to their personal participation, he overlooks that defendants may submit their own evidence to establish that they did not personally participate in the alleged violations. In the cases that he brings, the defendants had not come forward with rebuttal evidence or were not entitled to do so in that procedural posture. *Lavender v. Lampert*, 242 F. Supp. 2d 821, 840 (D. Or. 2002); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Barry v. Ratelle*, 985 F. Supp. 1235, 1239 (S.D. Cal. 1997). Since Ms. Sullivan met her burden, to defeat summary judgment Mr. Moore had to come forward with additional specific facts showing a genuine issue for trial. *See Matsushita Electric Indus. Co.*, 475 U.S. at 587-88. Mr. Moore has not met his evidentiary burden.

**B. Joseph Benson**

Judge Baldwin concluded that Dr. Benson should be denied summary judgment. A prison official only violates the Eighth Amendment if they subjectively "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Mr. Moore presented evidence that he sent Dr. Benson letters and kites beginning in early October 2023. Unlike Ms. Sullivan, Dr. Benson did not deny seeing the kites and letters. In his declaration, Dr. Benson testified that "even if the offender's kite is directed to a specific provider, it is not[] necessarily provided to that provider," and that "[i]f I were not the next

provider [who sees the patient], I would not even see the kite." (ECF No. 27-2.) Since Mr. Moore sent Dr. Benson kites and Dr. Benson did not deny seeing them, a jury could properly find that Dr. Benson consciously failed to act in disregard of serious risks to Mr. Moore's health and safety.

Dr. Benson objects for two reasons. First, he says that he did not delay Mr. Moore care because he provided other treatment that met Eighth Amendment standards, and it was only "speculation" that he had seen Mr. Moore's early October kite in which he asked for physical therapy. Second, the Defendants argue that if they caused a delay in Mr. Moore's physical therapy, there is no evidence that the delay harmed Mr. Moore. "Dr. Dirig appears to have indicated that atrophy to Moore's legs is the result of Moore's refusal to self-exercise... Accordingly, physical therapy would result in more, not less pain." (ECF No. 39 at 21.)

Both Dr. Benson's objection that the care provided was sufficient, and that the delay caused no harm are premised on showing that physical therapy was not a necessary part of Mr. Moore's treatment. The importance of Mr. Moore's physical therapy is worth addressing separately. On the evidence in the record, a factfinder could properly find physical therapy was critical to addressing Mr. Moore's serious medical needs.

From Dr. Dirig's medical notes, a factfinder could reasonably infer that lack of physical therapy was the primary reason that Mr. Moore remained wheelchair bound. Mr. Moore's leg was reportedly broken when another prisoner kicked him on August 23, 2022. (ECF No. 29-1.) About thirteen months later, Mr. Moore was still unable to walk. Dr. Dirig observed that he couldn't walk because he couldn't bend his leg or bear weight, and the solution was physical therapy. Other treatment was directed at secondary issues such as pain, ruling out the remote possibility of infection, and possible arthritic changes and a potential meniscus

tear that "might be causing some additional symptoms for him." (ECF No. 29-12.) About nineteen months after the accident, Mr. Moore was still wheelchair-bound. He went back to Dr. Dirig, who doubled down on his initial recommendations and repeated that if Mr. Moore worked on his flexion contracture in physical therapy and straightened his leg, he could begin walking with a cane or walker. (ECF No. 29-12.)

Defendants have presented almost no evidence showing that Mr. Moore's lameness did not require physical therapy. Defendants point to language in Dr. Dirig's notes saying that Mr. Moore had "no weight bearing or range of motion restrictions" and argue that Dr. Dirig thought Mr. Moore should self-exercise. But Dr. Dirig clearly prescribed physical therapy as Mr. Moore's primary treatment twice, and never recommended self-exercise. In context, his statement noting an absence of weight bearing or range of motion restrictions appears to be meant to show that there was no reason why physical therapy should not succeed. Defendants also state in their declarations that "Mr. Moore had no restrictions on weight bearing and could have done much to exercise his leg on his own," and then argue through counsel that they had a difference of medical opinion. (ECF Nos. 27-2, 27-4.) But these declarations, which were executed in February 2026, are worded such that they do not commit the Defendants to any position in October 2023. There is no evidence that the Defendants treated Mr. Moore during the relevant time by encouraging him to exercise on his own. Where a healthcare provider is aware that a patient needs aggressive physical therapy, but either does nothing or tells the patient to exercise on their own, they may still violate the Eighth Amendment. Th*ompson v. Corizon Health Care Inc.*, No. CV1902841PHXSRBESW, 2020 WL 6748736, at *15 (D. Ariz. July 27, 2020), on reconsideration in part, No. CV1902841PHXSRBESW, 2020 WL 6748556 (D.

Ariz. Aug. 31, 2020); *Jackson v. Rallos,* No. 2:09-CV-3234 KJN P, 2012 WL 1037937, at *22 (E.D. Cal. Mar. 27, 2012).

Since a factfinder could reasonably find that physical therapy was a necessary part of Mr. Moore's treatment, and its omission caused Mr. Moore harm, the only remaining issue is whether Mr. Moore was required to bring evidence showing that Dr. Benson read the kite directed to him in October 2023. Denial of summary judgment merely requires holding that there is sufficient evidence in the record for a factfinder to conclude that Dr. Benson was aware of Mr. Moore's condition, and the gap may be bridged by reasonable and commonsense inferences. A kite directed to Dr. Benson is enough on its own to create a dispute of material fact as to whether Dr. Benson knew of Mr. Moore's need for physical therapy. *See Hunt*, 865 F.2d at 201 (denying a defendant summary judgment where they "may" have been aware of the plaintiff's requests for treatment because the plaintiff's grievance for was referred to him.) The kite separates this case from the cases on which Dr. Benson relies, in which the plaintiffs were unable to present any evidence at all of the defendant's awareness or state of mind. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996); *Hummel v. Hurlbert*, 245 Fed. Appx. 571, 573 (9th Cir. 2007); *Toguchi*, 391 F.3d at 1059. Unlike Ms. Sullivan, Dr. Benson has not been able to rebut this showing with evidence that he did not see the kite. Summary judgment is appropriately denied as to him.[1]

---

[1] Judge Baldwin found that it was "undisputed that on the same day Benson learned Moore needed ice, he took steps to facilitate Moore's need." Judge Baldwin made this inference from Dr. Benson's statement in his declaration that he "agreed to call culinary to inquire" about ice, which Mr. Moore did not dispute. (ECF No. 27-2 at 2.) But Dr. Benson never said that he actually inquired about ice, only that he told Mr. Moore that he would. The Court therefore diverges from Judge Baldwin's finding of fact. Nevertheless, since Defendants moved for

**C. Lorenzo Villegas**

Judge Baldwin concluded that Mr. Villegas should be denied summary judgment. Mr. Villegas entered an order implementing some of the outside provider's recommendations on October 11, 2023, demonstrating that he was aware of Mr. Moore's need for treatment. But without explanation, he omitted the outside provider's recommendations regarding physical therapy and ice two to three times a day. Thus, a reasonable jury could find that his inaction led to a delay in care and constituted deliberate indifference.

Mr. Villegas objects that he did not delay Mr. Moore's care, and that the omission of some of Dr. Dirig's recommendations were merely a difference of medical opinion. He, along with Dr. Benson, argues that there is no evidence that any delay in treatment that they may have caused would have harmed Mr. Moore because Mr. Moore could have exercised on his own.

Mr. Villegas's objections are overruled for the same reasons as Dr. Benson's. There is nothing in his declaration or elsewhere in the record to show that his omissions were motivated by a difference of medical opinion. If Mr. Villegas did have a difference of opinion with Dr. Dirig, there is no evidence to show that the opinion was medically acceptable under the circumstances. "At some point 'wait and see' becomes deny and delay." *Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022). Mr. Moore had been wheelchair bound for over a year, and a factfinder could find that if he was going to heal himself without intervention, he would have done it. *See id.* Accepting that physical therapy could have been a useful intervention, a factfinder could find that a delay in obtaining physical therapy prolonged Mr. Moore's pain and suffering.

---

summary judgment and not partial summary judgment, and Judge Baldwin recommended denying Dr. Benson summary judgment (ECF No. 37 at 18), the Court adopts Judge Baldwin's final conclusion.

**IV. Qualified Immunity**

Qualified immunity is not merely an immunity from liability, but also an immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1098–99 (9th Cir. 1995). The doctrine of qualified immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The qualified immunity defense allows for mistaken judgments and protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* In so doing, it protects public officials "'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the *Saucier* analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (internal quotation marks and citations omitted). In step one, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. In step two, the court determines whether the right was clearly established at the time of the alleged violation. *Id.* The second step of the analysis is meant to encourage officers not "err always on the side of caution because they fear being sued." *Hunter*, 502 U.S. at 229 (internal quotations and citations omitted).

A right is clearly established if, at the time of the challenged conduct, "every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations and quotations omitted). Whether a right is clearly established for the purposes of qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The right must not be stated as a broad general proposition, but rather must be defined with enough specificity to put a reasonable officer on notice that his conduct is unlawful. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Officers can be on notice that their conduct is unlawful even in novel factual circumstances where their specific actions egregiously or obviously violates the general rule. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1073 (9th Cir. 2012); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But "the farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional." *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016).

Judge Baldwin denied qualified immunity on the basis that in 2023, it was clearly established that delaying treatment which would alleviate Mr. Moore's pain constituted deliberate indifference in violation of the Eighth Amendment. In so doing, she relied on *Reed v. Barcklay*, 634 Fed. Appx. 184, 186 (9th Cir. 2015) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The Defendants argue that the Eighth Amendment is not violated by mere failure to adhere to best practices, but only violated where "the medical standard was so well established that the failure to prescribe the course of treatment could only be considered deliberate indifference." *Carley v. Aranas,*103 F.4th 653, 661 (9th Cir. 2024). And, Defendants argue, there is no controlling precedent or

robust consensus of persuasive authority that establishes that failure to prescribe physical therapy under these circumstances would be deliberately indifferent.

The Court denies qualified immunity to Dr. Benson and Mr. Villegas. It was clearly established in 2023 that deliberately denying care under the circumstances presented would violate the Eighth Amendment. Mr. Moore could not walk and was suffering pain as a complication of breaking his leg in 2022. The primary treatment he was prescribed was physical therapy, with other treatments being for symptom management or detecting possible and yet-unknown contributing factors. Viewing the facts in the light most favorable to Mr. Moore, a factfinder could infer that Defendants deliberately delayed providing physical therapy and ice. As clearly established in the binding opinion in *Jett v. Penner*, 439 F.3d at 1096 and reiterated in *Reed*, 634 Fed. Appx. at 186, an official violates the Eighth Amendment when they purposefully fail to respond to a prisoner's pain, causing harm.

The Ninth Circuit's precedential opinion in *Stewart* provides further support to deny qualified immunity. *Stewart* began with words directly relevant to Defendants' arguments that they chose a medically acceptable alternative course of treatment: "Mere disagreement with a medical treatment plan is not deliberate indifference. But continuation of the same treatment in the face of obvious failure is." 33 F.4th at 1193. In *Stewart*, as here, prison medical staff argued that they had chosen a "wait and see" treatment plan. *Id.* at 1195. In *Stewart,* that plan was unsuccessful for three years. *Id.; see also Hunt*, 865 F.2d at 201 (reversing a grant of summary judgment where defendants' actions led to a three month delay in care.) The Ninth Circuit found that "every reasonable official would have understood" that under these circumstances, "wait and see" became "deny and delay," violating clearly established law. *Id.* Here, prison staff left Mr. Moore to

heal his own leg. Over a year after he broke it, he was still unable to walk. It should have been clear that the condition required some kind of treatment besides silently expecting him to administer physical therapy to himself.

Like the defendants in *Stewart*, Defendants here rely on *Hamby*, in which "watchful waiting" to see how a patient's hernia would develop was found to be a medically acceptable course of treatment. *Id.* at 1196. *Stewart* held that waiting still violates the Eighth Amendment notwithstanding *Hamby* where it is not so clear that waiting is reasonable, and when the patient is in pain. *Id.* This case is more like *Stewart* than like *Hamby*. As previously explained, Dr. Dirig prescribed physical therapy, and Dr. Benson and Mr. Villegas's declarations equivocated as to whether they believed that omitting physical therapy was reasonable. A factfinder could reasonably infer that delaying the only remedy prescribed for Mr. Moore's inability to walk prolonged Mr. Moore's pain and suffering.

Under *Stewart*, *Jett*, *Reed*, and other opinions like *Hunt*, the law governing Defendants' conduct was clearly established at the time of the alleged violation.

**V. Conclusion**

IT IS THEREFORE ORDERED that the final conclusions of the R&R on Defendants' motion for summary judgment are ADOPTED. (ECF No. 37.)

IT IS FURTHER ORDERED that the motion for summary judgment is GRANTED as to the claim against Megan Sullivan, and DENIED as to the claims against Lorenzo Villegas and Joseph Benson. (ECF No. 27.)

DATED: August 18, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE